**ORIENTAL ART PRINTING, INC. and Ngan & Sons Corp., Plaintiffs,**

v.

**GOLDSTAR PRINTING CORP., GS Printing Corp., Various John Does, Jane Does, and XYZ Companies, Defendants.**

No. 00 CIV 8374 AGS.

United States District Court, S.D. New York.

May 2, 2001.

**544**

Chak Chi Chong, Yuen & Yuen, New York City, for plaintiffs.

Bing Li, Raymond H. Wong, P.C., New York City, for defendant.

### MEMORANDUM ORDER

SCHWARTZ, District Judge.

In this action, plaintiffs seek injunctive relief and damages for defendants' alleged infringement of plaintiffs' copyright in a menu design for Chinese restaurants, and for unfair competition arising out of defendants' actions. Currently before the Court are (i) plaintiffs' motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a), and (ii) defendants' cross-motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, plaintiffs' motion is denied and defendants' motion is granted in part and denied in part.

### I. Factual Background and Instant Motions

Plaintiff Oriental Art ("Oriental Art") is a printing company which specializes in printing Chinese restaurant menus. Plaintiff Ngan & Sons ("Ngan & Sons") is a company which holds the copyrights in

certain designs used in Oriental Art's products. Plaintiff companies are jointly owned. Defendants are also printing companies with a common place of business.

According to the Complaint, in 1995 Ngan & Sons created and copyrighted a graphic design work entitled "Chinese dishes photo menu." (Compl. ¶ 6.) According to the materials submitted on the motion, plaintiffs' copyrighted work[1] consists of photographs of several common, but unlabeled, Chinese food dishes, arranged in various patterns on a white background. The dishes are arranged in full circles, semi-circles, and open circles, ovals, zig-zags, and parallel rows, among other patterns. Some of the arrangements also contain certain geometric artwork, such as floating hearts, stars, or diamonds. The food items themselves appear on plates of various sizes, which each contain the same traditional decorative pattern. (Compl., Ex. A; Defendants' Memorandum of Law In Opposition to Preliminary Injunction Motion and in Support of Motion to Dismiss ("Def.Mem.") at 5; Affidavit of Danny Lam dated Dec. 28, 2000 ("First Lam Aff.") ¶ 28.)

On November 1, 2000, plaintiffs filed this action, by order to show cause, to enjoin defendants' alleged use of plaintiffs' design. Plaintiffs allege that defendants "have been, and are continuing to infringe the copyrights in the Design by, among other things, printing and selling restaurant take-out menus containing reproductions of the Design." (Compl. ¶ 10.) While plaintiffs' "are presently unable to ascertain the full nature and extent" of defendants' activity or the monetary damages which they have suffered, plaintiffs introduced one example with their moving pa-

---

1. In this order, the copyright rights at issue are referred to as "plaintiffs'" rights, although Ngan & Sons is the registered owner of such rights, and Oriental Art is the licensee of such rights. (Compl. ¶¶ 6–8.)

pers that they claim is infringing: restaurant menu for a New Jersey restaurant called "No 1. Chinese Kitchen" (the "No. 1 Chinese Kitchen menus"). (Affidavit of Feng S. Zheng dated Sept. 29, 2000.) Plaintiffs claim that, in producing a menu for this restaurant, defendants copied plaintiffs' design and photographs, as embodied in a menu for the same restaurant previously produced by plaintiffs. While the Complaint also asserts claims for trademark infringement and unfair competition, plaintiffs' preliminary injunction motion is directed to their allegations of copyright infringement. (Memorandum of Law in Support of Motion for a Temporary Restraining Order and Seizure and Preliminary Injunction.)

Defendants cross-move to dismiss the Complaint in its entirety on the ground that the photographs contained in the copyrighted design and the No. 1 Chinese Kitchen menus are not copyrightable. (Def. Mem. at 3–10.) They also request joinder of two additional parties as plaintiffs, pursuant to Fed.R.Civ.P. 19(a) ("Rule 19(a)"), along with certain other relief addressed in Parts II.C and D, *infra.*

## II. Discussion

### A. Plaintiffs' Motion for Preliminary Injunction

#### 1. Legal Standard

■ Under the traditional test for the award of equitable relief, the Court may grant a motion for a preliminary injunction only upon a demonstration of (i) irreparable injury, *and* (ii) either (a) a likelihood of success on the merits of the case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly in favor of the moving party. *Waldman Publ'g Corp. v. Landoll,* 43 F.3d 775, 779–80 (2d Cir.1994). The Court

finds that plaintiffs' submissions do not demonstrate a likelihood of success on the merits, and because copying has not been established, has failed to prove irreparable harm. Nor does the record reflect that the balance of hardships tips decidedly in plaintiffs' favor.

#### 2. Likelihood of Success

■ In order to establish copyright infringement, a plaintiff must prove (i) ownership of a valid copyright, and (ii) copying of constituent elements of the work in question which are original. *Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). "The Copyright Act makes a certificate of registration from the U.S. Register of Copyrights prima facie evidence of the valid ownership of a copyright, see 17 U.S.C. § 410(c), though that presumption of ownership may be rebutted." *Rogers v. Koons,* 960 F.2d 301, 306 (2d Cir.1992) (citing *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985)). Protection under the Act extends to pictorial and graphic works, such as the photographs and design at issue here, pursuant to 17 U.S.C. § 102(a)(5). *See Rogers,* 960 F.2d at 306 (citing *Burrow–Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884)) ("For more than a century, photographs have been held to be copyrightable 'writings' under Article I, Section 8 of the Constitution."). Copyright in such works, as in any protectable work under the Copyright Act, protects against unauthorized copying not only in the work's original medium but also in any other medium. 1 *Nimmer on Copyright* § 2.08[E] at 2–128 to 129 (1999).

#### a. Ownership

In support of their position on the instant motions, defendants challenge plain-

tiffs' copyright claim on the ground that plaintiffs' photographs are not copyrightable. The scope of plaintiffs' copyright is integral to their allegations of infringement and their likelihood of success on their copyright claim, and is considered in the context of the preliminary injunction motion. The Court agrees with defendants that the photographs are not copyrightable—and therefore grants their motion to dismiss to the extent it so argues—but disagrees with their view that the uncopyrightability of the photographs alone disposes of plaintiffs' copyright infringement claim. The issue of the photographs' copyrightability centers on the concept of originality.

■■■ "Since the law protects authors' exclusive rights to their works, the cornerstone of that law is that the work protected must be original." *Rogers*, 960 F.2d at 307 (citing *Feist*, 499 U.S. at 345–46, 111 S.Ct. 1282) (stating that the originality requirement is constitutionally mandated for all works). That a particular work is copyrighted does not mean that every element of it is copyrightable; copyright protection extends only to those components of the work that are original to the creator. *Id.* A work is original if it was independently created by the author and possesses at least some minimal degree of creativity. *Feist*, 499 U.S. at 345, 111 S.Ct. 1282. The required creativity is small; "even a slight amount will suffice." *Id.* Moreover, "[o]riginality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* Elements of originality in a photograph may include posing the subjects, lighting, angle, and evoking certain desired expression, as well as other variants. *Rogers*, 960 F.2d at 307; *Kaplan v.*

*The Stock Market Photo Agency*, 133 F.Supp.2d 317 (S.D.N.Y.2001).

■■■ The Court finds that the requisite originality is lacking in this case. The photographs contained in plaintiffs' work, as the president of both plaintiff companies, Chi Lung Ngan ("Ngan"), concedes, depict the "most common Chinese dishes used in take-out menu [sic]."[2] (Declaration of Chi Lung Ngan dated Oct. 22, 2000 ("First Ngan Decl.") ¶ 4; *see also* Declaration of Chi Lung Ngan in Opposition to Defendants' Motion to Dismiss ("Second Ngan Decl.") ¶ 4.) While there are no labels for the dishes depicted, the Court assumes that such dishes include some or all of the dishes depicted by photograph in the No. 1 Chinese Kitchen menu, which defendants allegedly copied. Such dishes include: (i) sweet and sour chicken; (ii) General Tso's chicken; (iii) roast pork egg foo young; (iv) Singapore mei fun; (v) seafood delight; (vi) barbeque spare ribs combo; (vii) pepper steak with onion; (viii) pu pu platter; (ix) Peking duck; and (x) bean curd home style. (First Ngan Decl., Exs. A, B.)

■■■ The Court finds that this is the rare case where the photographs contained in plaintiffs' work lack the creative or expressive elements that would render them original works subject to protection under the Copyright Act. The photographs lack any artistic quality, and neither the nature and content of such photographs, nor plaintiffs' description of their preparation, give the Court any reason to believe that any "creative spark" was required to produce them. The photographs, as noted *supra*, are direct depictions of the most common Chinese food dishes as they appear on the plates served to customers at restaurants. According to defendants, the

---

2. Defendants also state that the photographs reflect the most common ways to serve the relevant food in Chinese restaurants in the United States. (First Lam Aff. ¶ 28.)

pattern on the plates is also extremely common, reflecting a traditional Chinese *"cloisonné porcelain"* pattern with lotus flowers and leaves. (Def. Mem. at 5; First Lam Aff. ¶ 28.) Each of the menus, and all of the sample photographs submitted in connection with the instant motions, depict food on plates with this decorative pattern. (Compl., Ex. A; First Ngan Decl., Exs. A, B; First Lam Aff., Exs. B–D, F–H; Reply Aff. of Danny Lam dated Jan. 23, 2001 ("Second Lam Aff."), Exs. J–L, O.) Moreover, as presented by plaintiffs in their Complaint and their exhibits on the pending motions, each photograph is a rather obscure, black-and-white, depiction of a particular Chinese dish. While plaintiffs allege the photographs were taken in 1993, two years before the menu design was created, plaintiffs fail to describe how the photographs were taken, or how they were incorporated into the copyrighted design as a whole. (Second Ngan Decl. ¶ 4.) While Ngan states that he worked with a photographer on the "lighting" and "angles," he provides no description of either the lighting or angles employed, or any desired expression. (*Id.*) From the exhibits submitted, both the lighting and angle

appear to be equivalent in every photograph. Finally, it is clear that the photographs at issue were not designed with creativity or art in mind. Rather, plaintiffs' photographs serve a purely utilitarian purpose: to identify for restaurant customers those dishes on a take-out menu, such that the customers may achieve a better understanding of what a particular dish contains. Thus, the Court concludes that plaintiffs' photographs lack the originality to be copyrightable.[3] *Cf. Burrow-Giles*, 111 U.S. at 55, 4 S.Ct. 279 (finding that photograph of Oscar Wilde demonstrated sufficient originality "by posing the said Oscar Wilde in front of the camera, selecting and arranging the costume, draperies, and other various accessories in said photograph, arranging the subject so as to present graceful outlines, arranging and disposing the light and shade, suggesting and evoking the desired expression ...."); *Kitchens of Sara Lee, Inc. v. Nifty Foods Corp.*, 266 F.2d 541, 544–545 (2d Cir.1959) (finding requisite originality where plaintiff "ha[d] put in time, creative thought and money" into its realistic pictorial representations, made by artists and lithographers, of certain cakes); *Pagano v.*

---

3. Even if the photographs were original works capable of being copyrighted, such photographs would be unprotectible under the doctrine of *scenes a faire*. This doctrine identifies and excludes from protection against infringement expression whose creation "flow[ed] naturally from considerations external to the author's creativity." 4 *Nimmer* § 13.03[B][4] at 13–73, [F][3] at 13–129 to 130; *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir.1980) (finding that the doctrine holds that "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic," are not protectable under the copyright laws). Here, each of the potentially protectable elements, i.e. the photographs' lighting, angle, and the choice of plates, flow necessarily from the subject matter of the photographs, i.e. the realistic depiction of most common Chinese

food dishes. *See Kaplan,* 133 F.Supp.2d 317 (finding that businessperson's typical garb, and angle and viewpoint of photograph depicting businessperson, were unprotectible); *Great Importations, Inc. v. Caffco Int'l, Inc.,* No. 95 Civ. 0514, 1997 WL 414111, at *4 (S.D.N.Y. July 24, 1997) (finding plaintiff could not claim protection for the "depiction of baby angels as round-cheeked, smiling or bemused, and wearing loose robes or drapery" because "these are stereotypical attributes of baby angels ... indispensable to the generalized idea of baby angels, analogous to unprotected *scenes a faire*"); *Kerr v. New Yorker Magazine, Inc.,* 63 F.Supp.2d 320, 324 (S.D.N.Y.1999) (finding that the idea of a New York skyline as a "Mohawk" haircut might reasonably be expected to include other unprotectible elements, such as eyes, nose, mouth, a figure in profile, and New York buildings).

*Charles Beseler Co.,* 234 F. 963, 964 (S.D.N.Y.1916) (finding that a photograph of the New York Public Library exhibited the necessary originality where the photograph in question contained an "artistic" quality).

The Court should note that finding the photographs in question to be copyrightable would secure plaintiffs the exclusive right of use in such photographs, which effectively would permit them to monopolize the market for printing menus that depict certain commonly served Chinese dishes. Such a result was not Congress' intent in enacting the Copyright Act to "promote the Progress of Science and useful Arts." Const. Art. 1 § 8; *cf. Sara Lee,* 266 F.2d at 543 (emphasizing that, in judging the issue of copyrightability for realistic depictions of merchandise, the Court must strike a balance between "protect[ing] plaintiff here against the onslaught of predatory competitors and equally to protect defendants from an unwarranted monopoly").

However, while plaintiffs' photographs are not original, the overall design in which they are contained does contain the requisite originality to render it a copyrightable work. *See Feist,* 499 U.S. at 348, 111 S.Ct. 1282 ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."); *cf. id.* at 348–51, 111 S.Ct. 1282 (finding that while facts are not protectable under the Copyright Act, factual compilations may possess the requisite originality to be copyrightable). Plaintiffs did not copyright the photographs themselves, but a "graphic design" for menus in which they appear, which contains arrangements of dishes, and in some cases, associated artwork. (Compl., Ex. B; First Ngan Decl. ¶ 4.) Their copyright registration certificate constitutes prima facie evidence of a valid copyright in such design. *Rogers,*

960 F.2d at 306. The burden is on defendants to rebut the presumption that plaintiffs are the valid copyright holders. *See Gaste v. Kaiserman,* 863 F.2d 1061, 1064 (2d Cir.1988). Defendants have not done so here, as they have based their arguments solely on the copyrightability of the photographs. Accordingly, plaintiffs have satisfied the Court that they own a valid copyright in their menu design.

**b. Copying**

■ Although plaintiffs have established, for the purposes of their preliminary injunction motion, that they own a valid copyright in their menu design, the Court finds that they are unable to establish the second element of the prima facie test: evidence of copying of the design's original constituent elements. The only evidence that plaintiffs have submitted in support of infringement are the No. 1 Chinese Kitchen menus. Because the photographs on such menus are not copyrightable, plaintiffs must be able to establish that the arrangement of dishes and associated artwork was copied. However, the No. 1 Chinese Kitchen menus do not reflect any of the arrangements in plaintiffs' registered work. (Compl., Ex. A; First Ngan Decl., Exs. A, B.)

In the allegedly infringing menu, there are two sets of dishes. In the first set, which appears in the menu's upper left hand corner, the dishes are grouped together in a filled oval, with seven dishes on the outside and one, the "pu pu platter," on the inside. The second set, which appears in the middle bottom of the menu, depicts two items placed on three adjacent plates at an angle. While some of the photographs appearing in the registered design are grouped together in circular or oval patterns, none of them contains either the same number of dishes or the manner of spacing present in the No. 1 Chinese

Kitchen menus. Moreover, because the individual photographs in plaintiffs' design are not labeled and the images lack clarity, it is not possible to determine whether any of the same photographs are depicted in the menu as are present in the registered work. Further, the borders present in the allegedly infringing menu are not present in the registered work. Accordingly, plaintiffs have failed to establish a likelihood of success with regard to copying on its preliminary injunction motion.

Even if the Court were to consider the No. 1 Chinese Kitchen menu allegedly produced by plaintiffs, rather than the registered work, as the genesis of plaintiffs' copyright rights in the particular arrangement of dishes featured in the menu, the preliminary injunction motion would still be denied, because plaintiffs have failed to establish that such design is sufficiently original so as to be copyrightable.[4] First, nothing in the record indicates that this design, i.e. the arrangement of the plates and associated artwork, was independently created by plaintiffs. Second, even if it were independently created, it is far from clear whether such design has the requisite "creative spark" necessary for originality. The oval arrangement of plates merely reflects the close clustering of dishes in order to fit the space allocated for them on the menu. Moreover, the rectangular borders surrounding the plates do not appear to be independently created, and are not particularly creative.

### 3. Irreparable Harm

The Court notes that the possibility of irreparable harm is eliminated because plaintiffs have not established the likelihood of success on the merits with regard to infringement. There is thus no reason to infer that plaintiffs could not be compensated by money damages.

### 4. Balance of Hardships

While there may be sufficiently series questions on the merits of plaintiffs' copyright claim to constitute a fair ground for litigation, the balance of hardships from the award of a preliminary injunction does not decidedly tip in plaintiffs' favor. In fact, because plaintiffs have not set forth facts showing that they have been, and continue to be harmed by defendants' alleged actions, the relative hardships suffered by either side as a result of the grant or denial of the requested injunction here appear to be evenly balanced. Both parties own successful printing businesses. While plaintiffs contend that they would lose "a significant portion of the[ir] market share" if an injunction is not granted, (Pl. Mem. at 9), defendants' printing business would be substantially curtailed by the grant of an injunction.

### 5. Conclusion

For the foregoing reasons, the Court denies plaintiffs' motion for preliminary injunction.

### B. Defendants' Motion to Dismiss

Defendants' motion to dismiss alleges that plaintiffs' copyright claim is invalid because the photographs are not copyrightable. It also alleges that plaintiffs' trademark and unfair competition claims should be dismissed because they are predicated on defendants' alleged misappropriation of plaintiffs' copyrighted works. (Def. Mem. at 1–11.)

First, the Court declines defendants' suggestion to convert the motion into one for summary judgment. (Defendants' Memorandum of Law in Reply to Plaintiffs' Opposition and in Further Support of

---

**4.** Because such design is not registered, there is no presumption of copyrightability.

Defendants' Cross–Motion ("Def.Mem.") at 1–2.) In rendering the decision on the motion to dismiss, the Court declines to consider the affidavits and exhibits submitted by the parties on the pending motions. *See Allen v. New World Coffee, Inc.*, No. 00 Civ. 2610, 2001 WL 293683, at \*2 (S.D.N.Y. Mar. 27, 2001). Second, for the reasons set forth *supra*, the Court grants the motion to the extent that it contends that plaintiffs' photographs are not copyrightable works, but denies the request to dismiss plaintiffs' Complaint in full, because defendants have failed to rebut the presumption that plaintiffs have a valid copyright in the menu design. Moreover, despite their suggestion to the contrary in their reply papers, (Def. Rep. at 7), defendants have not demonstrated that they have not copied plaintiffs' arrangements, either on the No. 1 Chinese Kitchen menu or elsewhere. Rather, defendants miss the point in asserting that copying of such arrangements by others in the absence of a suit by plaintiffs suggests there is no copyright:

> "[T]here are other menus printed by other printers other than defendant herein which used substantially similar photographs and the arrangements thereof. However, plaintiffs did not commence any legal action to enforce their copyright protection against these printers."

(Def. Rep. at 7.)

## C. Defendants' Request for Joinder

Defendants did not include a request for joinder in their notice of cross-motion. (Notice of Cross–Motion dated Dec. 28,

2000.) Nevertheless, defendants state in their moving papers that two third parties, Double G Graphic, Inc. ("Double G") and Chi Lung Ngan ("Ngan") should be joined as parties to the instant litigation pursuant to Rule 19(a).[5] (Def. Mem. at 12.) Specifically, defendants claim that Double G must be joined because (i) it has done business with defendants; (ii) a recent press announcement in a Chinese language newspaper stated that Double G was the owner of the copyrights claimed by plaintiffs, which renders the plaintiffs unable to sue, and (iii) Double G is "subject to defendant[s'] defamation claims" because it published the press announcement, which included defamatory statements concerning defendants. (*Id.*) Defendants state that Ngan must be joined because he (i) is the sole owner of both plaintiff companies, and (ii) has "personally tortiously interfered with Goldstar's business," which will subject him to personal liability. (*Id.*)

■ The Court denies the request for joinder. With regard to Double G, defendant has failed to establish that Double G is a party to the transactions at issue in the instant action, that relief can be accorded to those which are parties, or that its interests will be harmed by the outcome of this litigation; moreover, the Court does not perceive a substantial risk of inconsistent results or obligations were Double G not joined. Rule 19(a). Further, the current record reflects that Ngan & Sons is the owner of the copyrights at issue in this litigation, and that Oriental Art is a licensee; defendants' reference to a statement in the press announcement

---

**5.** Rule 19(a) provides that a person shall be joined "if feasible" if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

regarding Double G's ownership is inapposite here.[6] (Compl., Ex. B; First Lam Aff., Ex. I.) Finally, defendants have asserted no defamation claims in this action, either by way of counterclaim, or third party complaint.

■ With regard to Ngan, the mere fact that he is president, or even owner,[7] of both plaintiff corporations, or that he allegedly tortiously interfered with defendants' business, does not mandate joinder.

### D. Defendants' Additional Request for Relief

Defendants also request that the Court (i) enjoin plaintiffs from "continuing publishing [sic] any defamatory announcements against the defendant[s]," (ii) order plaintiffs to issue a public apology to defendants, and (iii) award defendants compensatory and punitive damages against plaintiffs. (Def. Mem. at 13.) Defendants' first concern has been adequately addressed by the restraining order issued by the Court on January 3, 2001. (Restraining Order dated Jan. 3, 2001). The Court declines to order plaintiffs to issue a public apology, and finds that there is no basis to award defendants damages against plaintiffs. The claims in this action have not been fully disposed of and defendants have filed no claims against plaintiffs.

### III. Conclusion

For the foregoing reasons, (i) plaintiffs' motion for preliminary injunction is denied, and (ii) defendants' cross-motion to dismiss is granted to the extent that it contends that plaintiffs' photographs are not copyrightable works, but is denied in all other respects.

SO ORDERED.

---

6. It should be noted that the announcement, as reflected in its translation, does not affirmatively state that Double G owns any copyright. (First Lam Aff., Ex. I.) It is also notable in this regard that defendants have not moved to dismiss the complaint on the ground that plaintiffs are not owners of the relevant copyrights.

7. The record does not reflect that Nagn is *owner* of the plaintiffs, only the president.